NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT JOHNSON, Petitioner, vs. B. CURRY, Warden, Respondent. | No. C 07-02610 JF (PR) ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole by the California Board of Prison Hearings ("Board") in 2003.[1] The Court found that the petition stated cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

///

**BACKGROUND**

---

[1] The petition was originally filed in the Central District of California and was subsequently transferred to the Northern District.

Petitioner was sentenced to life in prison with the possibility of parole after his conviction for first degree murder in Los Angeles County Superior Court. Petitioner was sentenced to 26 years to life in state prison. On July 17, 2003, after an initial parole suitability hearing, the Board denied parole. (Mot. to Dismiss, Ex. A) (Docket No. 5). Petitioner exhausted his state court remedies by filing habeas petitions in the state courts, with the California Supreme Court denying review on November 29, 2006. (Id., Ex. D.) The instant federal petition was deemed timely filed on March 29, 2007.[2] (See Docket No. 15 at 2.)

## DISCUSSION

### A. Standard of Review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the

---

[2] Respondent first filed a motion to dismiss the petition as untimely, but the Court denied the motion, finding the petition was timely filed pursuant to 28 U.S.C. § 2244(d). (See Docket No. 15.)

writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Superior Court for the County of Los Angeles. (Resp. Ex. 5 (In re Rooselvelt Johnson, Case No. BH003429, Oct. 19, 2005).)

1  B.     **Legal Claims and Analysis**

As grounds for federal habeas relief, Petitioner alleges the following claims: (1) the Board's decision to deny parole violated his right to due process because it was not based on at least "some" evidence of unsuitability; and (2) the denial of parole violated his right to due process because it was based on the Governor's blanket policy of denying parole to all individuals convicted of murder.

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13, 2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal may be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

When assessing whether a state parole board's suitability determination was

supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California Code of Regulations, title 15, section 2402(a) provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[3]

Most recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th. Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel opinion concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that the

---

[3] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit., 15 § 2402(d).

governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in Hayward.

Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it remains the law in this circuit that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, which is satisfied if some evidence supports the Board's parole suitability decision. Sass, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole. Id. at 1129. Biggs and Irons also suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. See Irons, 505 F.3d at 853-54. The Court notes that Petitioner had not yet served his minimum term on his sentence at time of the parole suitability hearing at issue.[4]

1. **"Some" Evidence**

The Board's decision denying parole in this case was based upon its review of the nature and number of the commitment offenses, Petitioner's prior criminal and social history, and Petitioner's behavior and programming during imprisonment. (Resp't Ex. 2, Ex. B at 5 ("Hr'g Tr.").) The Board concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society, or a threat to public safety if released from prison at this time." (Id. at 81.) The Board observed that the commitment offense was carried out "in an especially cruel and callous manner," and "carried out in a

---

[4] It is undisputed that at the time of the July 17, 2003 parole hearing, Petitioner had served approximately 16 years of his sentence. (Resp't at 1; Trav. at 1.)

dispassionate manner" that "showed a total disregard for another human being." (Id.) The state superior court laid out the facts of the crime in its order denying petitioner's state habeas petition:

> Petitioner is serving twenty-six years for murder in the first degree. The record reflects petitioner was selling drugs for the victim, who was his supplier. On the night of the commitment offense, petitioner went to the victim's residence. He told the Board he did so to give the victim money he owed from drug sales, but that he was short by one hundred dollars. Petitioner became involved in an altercation with the victim's cousin and petitioner produced a knife. The victim and petitioner then began to struggle. At some point the victim broke free and was on his knees when petitioner stabbed him in the chest. Petitioner fled and the victim died from his injuries.

(Resp. Ex. 5 at 2.)

The Board found that the motive for the crime was "inexplicable or very trivial in relationship to the crime that was committed," stating that "the loss of a human life over drugs under any circumstances is trivial." (Id. at 81.) The Board also considered Petitioner's prior-criminality as a juvenile into adulthood, which demonstrated an escalating patter of criminal conduct and violence. (Id. at 82.) Furthermore, the Board found "really disturbing" the fact that Petitioner's problems with the law stemming from substance abuse did not deter him from getting involved in drug activity in the prison setting as evident from the drug related disciplinary reports he received while in prison. (Id.) Finally, the Board took into consideration Petitioner's last psychological report which estimated a higher than average level of dangerousness if released to the community, outside a structured environment. (Id. at 83.)

The Board acknowledged the presence of several factors tending to show suitability: Petitioner upgraded vocationally and participated in education programs, (id.); Petitioner had good parole plans, (id. at 84); and Petitioner had not received any disciplinary reports since 1994, (id. at 85). However, the Board concluded that Petitioner had not completed the necessary programming and urged him to "continue on the track" of participating in self-help programs, particularly with respect to Petitioner's substance abuse problem. (Id. at 88-89.)

In its order denying habeas relief, the state superior court determined that the record contained "some evidence" to support the Board's finding that Petitioner was unsuitable for parole. The state court made the following observations:

> The Board found [P]etitioner unsuitable for parole because the commitment offense was especially cruel and callous in that it was carried out in a dispassionate manner, demonstrated a "total disregard" for another human being, and the motive was "inexplicable or very trivial." The Board also found [P]etitioner unsuitable because of his prior criminal history, misconduct during his incarceration, and because the psychological evaluation was not supportive of release.
> ...
> The factors related to the commitment offense that tend to favor unsuitability are set forth in California Code of Regulations, title 15, section 2402(c)(1)(A)-(E). "Disregarding another human being" is not among them. It is likely not included because it would apply to virtually every life term inmate. However, an inmate may be unsuitable for parole if the crime was carried out in dispassionate and calculated manner (Cal. Code Regs., tit. 15, §2402(c)(1)(B)) or if the motive is "inexplicable or very trivial to the offense" (Cal. Code Regs., tit. 15, §2402(c)(1)(E)) (footnote omitted.) Here [P]etitioner stabbed the victim to death while he was on his knees, apparently over some drug related dispute. Those facts are "some evidence" the crime was carried out in a dispassionate manner and the motive was very trivial.
> An inmate may be unsuitable for parole if he has a previous record of violence. (Cal. Code Regs., tit. 15, §2402(c)(2).) The record reflects when [P]etitioner was seventeen years old he threatened to shoot a security guard in a school parking lot. Later, [P]etitioner and a companion returned tot he area and [P]etitioner menaced the security guard with a tire iron. Therefore, there is "some evidence" [P]etitioner is unsuitable because of a previous record of violence.
> An inmate may also be unsuitable for parole if he engages in "serious misconduct" during his incarceration. (Cal. Code Regs., tit. 15, §2402(c)(6); Cal. Cod Regs., tit. 15, §3315.) The record reflects [P]etitioner has received six 115 disciplinary violations during his incarceration. Most significantly, two were for possession of a controlled substance and one was for trafficking a controlled substance. Thus, there is "some evidence" [P]etitioner is unsuitable because of serious institutional misconduct.
> Lastly, the psychological evaluation completed by Dr. C. Saindon, concluded [P]etitioner's risk for danger in the community is "higher than the average citizen," given his history. Thus, there is "some evidence" the evaluation did not favor [P]etitioner's release.

(Resp. Ex. 5 at 2-3.)

As noted by the state court, the Board denied Petitioner parole not only because of the nature and circumstances of Petitioner's commitment offense but also because of Petitioner's criminal history, misconduct during incarceration, and unfavorable psychological evaluation. Contrary to petitioner's claim that the Board's decision was

not based on "some" evidence of unsuitability, the record clearly shows that there was "some evidence" to support the Board's decision finding Petitioner unsuitable for parole, and the evidence underlying the Board's decision has some "indicia of reliability." Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904).

### 2. **"Blanket Policy"**

Petitioner's second claim is that the denial of parole violated his right to due process because it was based on the Governor's blanket policy of denying parole to all individuals convicted of murder. Petitioner asserts that the Board and the Governor are conspiring to maintain this "no parole policy." (Trav. 15.) Put another way, Petitioner is claiming that the Board is systematically biased. The state superior court rejected this claim, finding that Petitioner "has failed to present any evidence that the Board has a 'no parole police.'" (Resp't Ex. 5 at 3.)

A prisoner is entitled to have his release date considered by a parole board that is free from bias or prejudice. O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (citing Schweiker v. McClure, 456 U.S. 188, 195 (1982); Morrissey v. Brewer, 408 U.S. 471, 489 (1972); and Sellars v. Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)). However, Petitioner has failed to present any evidence in support of his assertions, including a showing of bias by any of the individual commissioners on the Board. Without such evidence, Petitioner's claim that the Board is conspiring with the Governor in maintaining a "no parole policy" is conclusory. The parole suitability hearing transcript shows that the Board considered Petitioner's suitability on an individual basis and in considerable detail, and the record as a whole reflects an individualized treatment of Petitioner's case. Finally, Petitioner raised no concerns when asked at the hearing whether Petitioner had any reason to believe that the panel members would not be fair and impartial. (Hr'g Tr. at 9.) Accordingly, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

This Court concludes that Petitioner's right to due process and liberty interest were not violated by the Board's decision to deny parole. The state courts' decisions were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2).

**CONCLUSION**

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: 1/19/10

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ROOSEVELT JOHNSON,

    Petitioner,

v.

BEN CURRY, Warden,

    Respondent.
_____/

Case Number: CV07-02610 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 1/27/10 , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Roosevelt Johnson D-63610
Chuckwalla Valley State Prison
P.O. Box 2349
D-10-258-J
Blythe, CA 92226

Dated: 1/27/10

Richard W. Wieking, Clerk